Case number 13 5539 Liberty Corporate Capital Limited versus Security Safe Outlet et al. Oral argument not to exceed 15 minutes per side. Mr. Redford for the appellate. May it please the court. My name is Trip Redford. I represent Security Safe Outlet and Matthew Denninghoff. I'll probably call it SSO. That's what I've called it for the last several years. We're here to discuss what many would consider to be a riveting topic of insurance, commercial general liability coverage. Historically, I've not considered it that exciting. Usually we don't even talk about our insurance except the day when we don't have coverage. So we don't have coverage apparently, so we're here today. A couple of bigger points before I focus in tightly on the issues that I think are relevant for this court to review. The bigger issues are, as an attorney, when you receive a complaint that's 28 pages long, 146 paragraphs, with 11 counts, the last thing on your mind is that there's not something in there or that there's the absence of allegations that would trigger coverage. In other words, you think, well, gosh, there's got to be something in here, some words in here that are going to trigger coverage. That's where you start with this particular case. You also start with this particular case with the concept that, yes, we're now in 2014, and businesses these days do a significant amount of business online. And, in fact, my client and the entity that was involved in this underlying dispute are both online businesses. They do have a presence in brick and mortar, but the bulk of the business is all online. So knowing those two kind of basic concepts of what's going on with this particular case, we have focused on counts one, two, and three of the complaint and not the other eight that are left. We think count one is our strongest case. And, in fact, the district court did hold that with count one, it's the misappropriation of trade secrets, and also cites the Kentucky statute on the same. That's count one. The essence of that case was an argument that SSO improperly obtained a database of customer names and addresses. In 2014, it makes sense that it's a data file, electronic file. If we were here 15 or 18 years ago, we probably would have had a stack of papers about eight inches thick that would have been the customer list. We think it's important to understand where we are today with respect to the electronics. The same protections would apply, correct? I mean, an employee who left the employee and took a stack of papers, which was a customer list in violation of either the express or the implied obligation for fidelity wouldn't be able to circumvent that just because they took the electronic database instead. I agree. And, likewise, for our particular case, we think there shouldn't be a distinction between whether the misappropriated items were in paper format or in electronic format, which gets into some more of the hyper-technical issues. But, fundamentally, what you had here was that particular data, it was alleged, was then used to send out mass email blasts, which I'm sure I'm not the only fellow in town who receives the lands end email blast every morning, which is effectively what this is all about. It's an email blast going to targeted customers to the extent that they are on that list. It seems to us that this is your classic advertising injury and should fall under that CGL provision because the opposition was arguing, you harmed us by not necessarily so much the misappropriation as much as the actual advertising blast that went out. It went to our customers. We have been harmed. You have devalued our name. You are taking our customers. You've diminished the value of our products. That seems to be your classic advertising injury claim. Fundamentally, the trial court found that the misappropriation claim did fall under that advertising injury. But then, and as we narrow the focus here, where the court decided we did not have coverage was under the exclusion. The contract exclusion is what I generally refer to it as. I think the important point about the contract exclusion is the facts in this particular case, which I think, Judge Donald, gets to where you were talking about the employee. What the trial court relied upon was the notion that this exclusion, that the advertising injury arises out of the breach of contract. Breach of contract in this context being the allegation that Mr. Denninghoff was purportedly under a non-compete such that when he was employed by BGS that he signed an agreement and therefore he violated that agreement by the misappropriation. Our point is a couple of points on this. The first one is there are allegations in this 146 paragraphs that say we wrongfully acted and wrongfully obtained this information even separate and apart from Mr. Denninghoff. The allegations in the complaint are that BGS admitted that they had allowed us access to that data, that we had a joint feed, that we shared the data. That allegation is in there. So separate and apart from anything that Mr. Denninghoff did or had access to, SSO potentially was subject to exposure and liability based on those other allegations. But you had access to it on a very restricted and limited basis. For example, you could review maybe only a couple of data items discreetly at one time, correct? That was the allegation, but that seems to me that by opening that door, that's separate and apart from the notion of a total file taken or a total download made separately if in fact that were the case. Once the door is open to access to that information on this pathway, it seems to me the notion that the exclusion of arising out of a contract fails. Then my second point on this contract provision that the court relied upon is this notion of the arising out of. As we look at it, that's quite problematic. It's very vague, ambiguous. It doesn't limit who the parties to the contract have to be for it to be applicable to that exclusion. It's undisputed that SSO was not a party to the contract that the trial court relied upon to say that the exclusion applies. Interestingly, to think that out and through to the next logical step, it doesn't limit who the parties to the contract could be. It doesn't limit the type of contract that it is. It doesn't, as you've seen with kind of the back and forth on the capital specialty line of cases in Huguenot and we've argued the Eiler case, that this arising out of language, how broadly it's supposed to be interpreted or how narrowly it's supposed to be interpreted. Our position is under the Kentucky Supreme Court case of Eiler, which interestingly enough the district court cited in its opinion for a particular standard, that's the one we think is more applicable to this situation about the arising out of the contract because it requires that there be some type of causal connection or some hook between the contract and what's going on. In this particular scenario, the other point that needs to be made is that, and this kind of jumps to the end of our argument, which is Mr. Denninghoff isn't insured. That's an argument the trial court chose not to address, but I think it's important to mention because the allegations in the complaint are not that Mr. Denninghoff's actions were wrongful in the storing or the making of the backups of this information. His actions were wrongful in the providing or the sharing of it after the fact. And at the point of the sharing or the providing it to SSO, he was an SSO employee. So that's a fundamental fact that the trial court completely missed that I think is critical to the analysis that Mr. Denninghoff isn't insured. As you progress through the Count 1's misappropriation, Counts 2 and 3 deal with the fundamentally it's their trade name issue. In the Counts 2 and 3, it seems to us that it is not as complicated as everyone wants to make out. It's simply unauthorized use of a trade name. Counts 2 and 3, no matter how it's worded, that's what's going on is they didn't like the fact that, and they allege that SSO continued to use the Bud's name when it didn't have authorization to do it. And in general, it seems to us that that is also falling under the advertising injury classic coverage claim. The last point that I would like to make on the overall scheme of the case is the arguments we made that we should have coverage under the property damage provision. You probably read with some interest the district court, I'll use the term chastise us for, as it said, we grossly misrepresented what the Luckett case stands for or says, Luckett case. My partners and I have read that multiple times, and we respectfully disagree with the trial court's characterization of our characterization. But I'll leave that to you to review. But fundamentally, we think the rationale in that Luckett case is good and on point with the notion of loss of use. That the property damage falls under loss of use because the allegations in the complaint by BGS are that our unauthorized use of the trade name diminished the value of their name and effectively took business from them. And as a result, they didn't have sales. They lost sales. They didn't have sales for certain inventory. And that falls under that Lucker analysis of what loss of use can be, which is you lost the business, supply and demand changes. So we think overall that there should be coverage and the trial court should be reversed. Thank you. Thank you. Good morning, Your Honors. Greg Mass for Liberty Corporate Capital. Liberty respectfully asks this court to affirm the district court's decision for two primary reasons. First, SSO failed to contest the relevant exclusions at the district court level, specifically failed to contest the application to breach a contract exclusion. So what's been presented here today largely is an argument that's frankly new. Second, as to the remaining substantive issues, the claims are neither covered under coverage A nor coverage B. And even if they were, they would be excluded. To get straight to the substance of the matter, Liberty moved for summary judgment and Bud's Gun Shop, who was a defendant, did not contest the motion. Security Safe Outlet did, however, file a 12-page opposition addressing all these various provisions. But that opposition brief failed to ever address the breach of contract exclusion in coverage B, cited by Liberty, which was the primary oral argument the court just heard. Therefore, Judge Forrester wrote, quote, SSO does not respond to Liberty's argument that the exclusion for personal and advertising injury arising from breach of contract bars coverage for Count 2's trademark infringement claim or for Count 3's breach of contract claim, thus waiving the opportunity, end quote. Now, this court has previously held, in the case of Michigan Bell Telephone Company v. Strand, a 2002 case, quote, this court does not ordinarily address new arguments raised for the first time on appeal. In explaining why we have written, propounding new arguments on appeal and attempting to prompt us to reverse the trial court, arguments never considered by the trial court, is not only somewhat devious, it undermines important judicial values. In order to preserve the integrity of the appellate structure, we should not be considered a second-shot forum, a forum where secondary backup theories may be minted for the first time, end quote. Given the failure to address the breach of contract exclusion at the trial court level, the entire analysis about capital specialty and whether EILER applies simply goes out the window. This is all new arguments being presented here for the first time. I think maybe it makes sense to address the actual substantive issues in order. That is to start with coverage A, which is our property damage coverage. Now that is the somewhat colorful analysis by Judge Forrester of the gross misrepresentation of the Lucker decision. But I don't think we need to get into the niceties of how that decision works or applies or what's fundamentally wrong with the decision, because there simply is no allegation in the underlying complaint of loss of use up to physical or tangible property, which is what's required by the policy. What's alleged in the complaint is that Security Safe Outlet at paragraph 55 falsely represented the quality of its own goods, and that that caused damage and reputation in paragraph 88 to the goodwill and reputation of Bud's Gun Shop. Respectfully, that's not tangible property. The goodwill and reputation of a company is not something that can be physically touched. What Security Safe Outlet has argued in its brief is that Bud's Gun Shop lost the opportunity to sell firearms. Respectfully, that's not contained within the complaint. This court's jurisprudence in the Holloway Sportswear case, which is also a personal advertising injury decision, makes it very clear that we shouldn't assume facts that are not mentioned in the complaint. We shouldn't assume the cause and effect. That case involved a tortious interference claim, and the subsequent allegation was, well, that there must have been disparagement because you were reaching out to my customers. And this court said, well, no, just because you've tortiously interfered with my business relationship doesn't mean that you've disparaged or that you qualify as a personal advertising injury. For the same reason, this court should not consider the lack of evidence in what is a lengthy complaint to be a basis upon which to reverse the trial court's decision. You referred to Paragraph 88, and that's part of Count 2, right? Yes, Your Honor. Yes. So are you going to address Count 1? Because you said we should view your opponent as having forfeited the opportunity or waived the opportunity to address Counts 2 and 3, but you did not say that vis-a-vis Count 1. With regard to the breach of contract exclusion, they also have. There was no address. The breach of contract exclusion was never addressed at all. Judge Forrester's decision specifically notes that they failed to address the breach of contract exclusion under Coverage B as to Counts 2 and 3, but they also failed us to Count 1. And ultimately, that forms part of his decision. He doesn't, I guess, for lack of a better word, default them for that issue, but he does address that specific exclusion. Now, there may be some confusion. If you don't study insurance policies on a regular basis, you may miss that there is a contractual limitation exclusion, which applies to Coverage A. And in fairness to Security Safe Outlet, they did address that particular issue at the trial court. They just didn't address the very different breach of contract exclusion. Contractual liability exclusion or limitation applies in the context of where you assume the liability of a third party, whereas the breach of contract exclusion just simply says this cause of action arises out of a breach of contract. Now, with regard to an additional exclusion, which I don't believe has been addressed at all yet, is the intellectual property exclusion. Now, the policy also in Coverage B bars coverage for any claims of, quote, other intellectual property. And the sole argument in opposition to the application of that exclusion to any, to count one, to count two, or to count three, the sole argument is that it's ambiguous. But the reason why it's argued in the papers to be ambiguous is because the policy in providing a grant of coverage says we do provide coverage for copyright, trade dress, and slogan. So, therefore, the Security Safe argues that it must be ambiguous when applied to, when we talk about what is other intellectual property. Respectfully, that exclusion doesn't apply to the facts as being applied in this case because we don't deal with a copyright, we don't deal with a trade dress or a slogan issue. So, to the extent that there's a confusion in those very limited circumstances, it doesn't apply to these facts. Isn't it reasonable, though, to, I guess, to construe it such that trade name would be so closely related or connected to, you know, trade dress or trademark as to be sort of subsumed by that, even though it's not specifically mentioned in the contract? Well, this is where we're fortunate that this Court has been so detailed in addressing personal advertising injuries. And I'd refer the Court to the Show Lodge case, also decided by this Court, in which the Court specifically said there is no, it's not close enough, that there is a difference between trademark, trade dress, that those are distinct legal concepts. But even if they were close enough, it's still appropriate for a policy to provide some limitations on coverage. That is, everything within the grant of coverage isn't guaranteed to be covered. That is, you can have subsequent exclusions. That's the purpose of limitations of coverage in a policy. Now, the last, I think, and probably the more difficult or detailed question, is whether the claims come within coverage at all, under coverage B. And for the reasons I suggest, I don't think we have to get to that analysis. But I don't think, and I don't see here, where we have an advertising injury. Advertising injury has a specific definition of the policy. Now, Judge Forrester did find that it was probable that there was an advertising injury. I think, given the difficulties of this question, we have to kind of dig a little bit deeper. There's two ways that SSO argues that they have an advertising injury. The first is to say that there was disparagement. That is, you disparage Bud's Gun Shop. The second is this argument over an advertising idea. Disparagement, again, I think is controlled by the Hollowell sports case, which this court said you can't assume that disparagement exists. But as to the question of advertising idea, I think this is one of the more complex questions because we deal with a case that's been highly criticized for other reasons across the country. And that's the Advance Watch case decided by this court. Now, in Advance Watch, this court said that advertising idea was more than just the notice provided. That is, it's more than just the advertisement itself. The idea has to have some meaning, which in that context is the calling attention specifically to the product. Well, under Kentucky law, and I know I stopped you in mid-thought, but under Kentucky law, shouldn't the fact that the policies at issue don't define the term advertising idea, shouldn't that be construed against liberty since liberty is the drafter of the contract? Respectfully, no, Your Honor. You only construe a provision against the insurer if there's an ambiguity. So the mere absence of a definition is not sufficient to require the court to construe it against liberty. In fact, I would refer the court to Judge Moore's written decision in the case of Cincinnati Insurance v. Zen where she dealt with the question of what constitutes a slogan. And slogan's not defined in the policy either. But yet, based on the Advance Watch case, the same one we rely on here, Judge Moore was able to give the common understanding, common definition of what constitutes a slogan. So in that context, respectfully, I disagree, Your Honor. With regard to Advance Watch, though, much is made of the use of that court's decision or the way that court's decision has been construed by other jurisdictions vis-a-vis its trademark analysis. Respectfully, that's not before the court. And so what we're really just looking at is that straight definition of what constitutes an idea. Because the policy itself defines advertisement, advertisement being a notice. So we know that an advertising idea has to mean more than just the plain, simple notice to customers. The email itself cannot be an advertising idea. So what SecuritySafe then argues is, well, the advertising idea is the database. Well, respectfully, the database itself is not provided to customers. It's not the idea. The idea in the context of an advertising injury or advertising idea case is something about the product. That is to say, in going back to the Zen case, in that matter, the question was the reference to the wearable light, which was an LED case. And Judge Moore correctly noted that that's a slogan, that's a phrase that the company uses to promote its ideas. That would be an advertising idea. What we have here, though, there's nothing unique about the emails, and there's no description of the emails whatsoever. So for that reason, respectfully, there is no unique advertising idea. Finally, as to Denninghoff, I'll simply say that this is the one close call, if we actually get there. Because he took the database, and the allegations and the complaint are that he knew that he was going to SecuritySafe. His sister was the vice president of SecuritySafe outlet. That he took the database in the conspiracy to provide this information on 204,000 customers so that SecuritySafe would have a competitive advantage in competing. The question then becomes, did he commit those acts while as an employee of SecuritySafe, as opposed to Bud's Gun Shop, and did he do that within his duties as an employee of SecuritySafe? I question whether industrial espionage could ever be considered within one's duties of employment, but pre-permitting that argument, it's clear that the database was taken, or at least kept, when he returned everything else, or deleted everything else. He kept the database while he was still an employee of Bud's Gun Shop. And so for that reason, Your Honors, if there are no more questions, I would just simply respectfully ask the court to affirm. Thank you very much. Thank you. If it pleases Your Honor, we've been criticized for the issue about the exclusions. Our argument at the trial court was, and remains the same today, that based upon the 146 paragraphs, there's coverage by other means. Getting to that breach of contract issue was a non-issue for us. As you mentioned, the broad standard in Kentucky to provide coverage, it's whether possibly or might some allegation might fall within the coverage. So with that broad standard, our argument was presented to the trial court. Secondly, as to the advertising idea segment that was just discussed, I would point out that that term is not defined in the policy. I agree it should be construed against the drafter. We also cited a trail of cases, for example, Hyman v. Nationwide, that deal with the advertising idea terminology. And we think it supports our position that the customer list is an advertising idea. With respect to Advance Watch, our perspective on that case is, and I think that's exactly what Judge Moore may have seen in the Cincinnati v. Zinn case, is it seems to be somewhat of an outlier these days. It's not necessarily that you have to run headfirst into it, but it seems that it has been overread and or stretched to the extremes of its four corners as to what that case really stands for. And finally, a point on the issue about Mr. Denninghoff and the timing and those type of things. Again, the complaint itself acknowledges that BGS did not even legally exist at the time Mr. Denninghoff left that employment, whatever that employment was. So timing does mean a lot for all these allegations and, again, for the expectation that SSO would have coverage under its general liability policy. Thank you. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call any remaining cases?